UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Anthony John Palubicki,

      Petitioner,

      v.                                         Civil Action No. 1:16-cv-250-jgm-jmc

State of Minnesota and
State of Vermont,

      Respondents.

## REPORT AND RECOMMENDATION
(Doc. 4)

Petitioner Anthony John Palubicki, proceeding *pro se*, has filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus to vacate his State of Minnesota conviction for first-degree murder in violation of Minn. Stat. § 609.185(a)(1) (2006). (Doc. 3 at 64.) Following a jury trial, Palubicki was sentenced to life in prison. *State v. Palubicki (Palubicki I)*, 700 N.W.2d 476, 480 (Minn. 2005). He is now in the custody of the Vermont Department of Corrections (DOC) via a prisoner exchange pursuant to the Interstate Corrections Compact (ICC), Vt. Stat. Ann. tit. 28 §§ 1601–21 (1969). *In re Palubicki*, No. 2015–127, 2015 WL 4771550, at *1 (Vt. Aug. 12, 2015). In his Petition, Palubicki contends that the Court should "vacate [his] illegal conviction and dismiss it with prejudice." (Doc. 3 at 64.)

Presently pending before the Court is a Motion filed by Respondent State of Vermont to either transfer Palubicki's Petition to the United States District Court for the District of Minnesota where venue and jurisdiction are proper (Doc. 4 at 6–8) or, in the alternative, dismiss Palubicki's Petition for failure to first seek permission to file from the United States Court of Appeals for the Eighth Circuit pursuant to the requirements of 28 U.S.C. § 2244(b)(3)(A), applicable to second or successive § 2254 petitions (*id.* at 5–6). The Respondent State of Vermont has also moved for an enlargement of time in which to file an Answer to the Petition. For the following reasons, I recommend that the Motion for Change of Venue be GRANTED or, in the alternative, the Motion to Dismiss be GRANTED.

## Background

In 2005, a jury in Hubbard County, Minnesota, convicted Palubicki of "one count of first-degree premeditated murder in violation of Minn. Stat. § 609.185(a)(1) (2004) and two counts of first-degree felony murder in violation of Minn. Stat. § 609.185(a)(3) (2004)" for his involvement in the January 25, 2003 murder of 90-year-old Lorentz Olson. *Palubicki I*, 700 N.W.2d at 480. The evidence revealed that Palubicki killed Olson by bludgeoning him in the head with a hammer while Palubicki and his coconspirator, Scott Fix, attempted to rob Olson's home. *Id.* at 480–81. For Palubicki's role in Olson's murder, "[t]he trial court entered separate adjudications and life sentences for all three counts." *Id.* at 482. Palubicki appealed his conviction to the Minnesota Supreme Court, "citing numerous procedural, evidentiary, and sentencing errors." *State*

*v. Palubicki (Palubicki II)*, 727 N.W.2d 662, 664 (Minn. 2007).  The Court dismissed all but one of these claims, holding that "the trial court erred when it entered separate adjudications and sentences for each of Palubicki's first-degree murder convictions." *Palubicki I*, 700 N.W.2d at 491.  It remanded the case to the trial court for "re-adjudication and sentencing." *Id.*

Following the Minnesota Supreme Court's decision, but before the Minnesota trial court heard Palubicki's case on remand, Palubicki filed a petition pursuant to 28 U.S.C. § 2254 with the United States District Court for the District of Minnesota.  (Doc. 4-2 at 1.) Palubicki claimed that the Minnesota Supreme Court erred in affirming the trial court's decision to exclude evidence of misconduct of two trial witnesses, Fix and Palubicki's wife, Joy Cantrell.  (*Id.* at 2.)  Palubicki sought to introduce evidence of the robbery of a local gas station, which he alleged was committed by Cantrell and Fix.  (*Id.*)  The Court considered dismissing Palubicki's Petition for failure to exhaust all state court avenues of relief prior to filing, but it ultimately dismissed his claim on the merits.  (*Id.* at 3–6.)  The court concluded that the trial court and the Minnesota Supreme Court were not unreasonable in excluding the evidence.  (*Id.* at 4–6.)

On remand from the Minnesota Supreme Court's 2005 decision, the state trial court "entered a life sentence on Palubicki's first-degree premeditated murder conviction and vacated the [two] first-degree felony murder sentences." *Palubicki II*, 727 N.W.2d at 664.  Palubicki was ordered to pay restitution to the Minnesota Crime Victims Reparations Board for the cost of both cleaning the murder scene and Olson's funeral, and, to Olson's two adult children, the costs they incurred as a result of attending

3

Palubicki's trial. *Id.* at 664–65. Palubicki appealed, claiming the trial court erred in calculating restitution and by "fail[ing] to vacate two of his three convictions." *Id.* at 665. The Minnesota Supreme Court held that the trial court did not err in calculating the amount Palubicki owed in restitution, *id.* at 665–68, but that it did err when it failed to simultaneously vacate Palubicki's two first-degree felony murder convictions when it vacated the sentences for those convictions, *id.* at 668. Finally, "in the interest of judicial economy," the Court vacated Palubicki's two first-degree felony murder convictions. *Id.* In dismissing these convictions, the Minnesota Supreme Court noted "that if Palubicki's first-degree murder conviction is later vacated for any reason, the district court may then enter a first-degree felony murder judgment against Palubicki." *Id.*

Palubicki was eventually transferred to the DOC from the State of Minnesota pursuant to the ICC. *In re Palubicki*, 2015 WL 4771550, at *1. He then filed a petition for postconviction relief in Vermont Superior Court challenging his Minnesota conviction. *Id.* The Superior Court "dismissed [Palubicki's] petition for lack of subject[-]matter jurisdiction," because a court may only provide postconviction relief in "the county where the sentence was imposed," and Palubicki's sentence was imposed in Minnesota. *Id.* (quoting Vt. Stat. Ann. tit. 13 § 7131 (1973)) (citing Minn. Stat. Ann. § 590.01 (2005)). Palubicki then appealed the Superior Court's decision to the Vermont Supreme Court, which affirmed the lower court's dismissal. *Id.* The Vermont Supreme Court found the dismissal of the petition was warranted because, under the ICC, "out-of-state inmates are at all times subject to the jurisdiction of the sending state regarding

transfer, release, and other matters concerning their conviction or original sentence." *Id.* (citing Vt. Stat. Ann. tit. 28 § 1604(c), (e) (1969)).

Just over a year after the Vermont Supreme Court affirmed the Superior Court's dismissal of Palubicki's petition for postconviction relief, Palubicki filed the instant § 2254 Petition with this Court. (Doc. 3.) In the 401-page Petition, Palubicki again attacks his original conviction on a number of different grounds, many of which are unclear. (*Id.*) The State of Vermont has responded, requesting that this Court either transfer the case to the United States District Court for the District of Minnesota or, in the alternative, dismiss Palubicki's Petition "for failure to seek permission in the Court of Appeals to file a successive petition." (Doc. 4 at 2.)

## Discussion

### I. Whether the Court Should Transfer Palubicki's § 2254 Petition to the United States District Court for the District of Minnesota

A district court may transfer a civil case[1] to a different venue "[f]or the convenience of parties and witnesses," or "in the interest of justice." 28 U.S.C. § 1404(a) (2011). The court's ability to transfer venue, however, extends only to transferring the case to a venue "where it might have been brought." *Id.* A case "might have been brought" in any district where the court had subject-matter jurisdiction, where the court had personal jurisdiction, and where venue was proper. *See Smart v. Goord*, 21 F. Supp. 2d 309, 313 (S.D.N.Y. 1998). Therefore, the instant case may be transferred to the

---

[1] District courts may transfer habeas corpus proceedings to a different venue pursuant to § 1404(a), because "[h]abeas corpus cases are civil in nature and are embraced by the term 'any civil action.'" *Smart*, 21 F. Supp. 2d at 313 (quoting *United States ex rel. Meadows v. State of New York*, 426 F.2d 1176, 1183 n.9 (2d Cir. 1970)).

5

District of Minnesota if it "might have been brought" in that district originally and the Court deems such transfer in the best interest of the litigation for reasons of convenience and fairness.

### A. Subject-Matter Jurisdiction

Federal district courts may exercise habeas jurisdiction over "a person in custody pursuant to the judgment of a State court" when the petitioner alleges that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (1996). The District of Minnesota possesses subject-matter jurisdiction over Palubicki's claim, because Palubicki is currently incarcerated pursuant to his conviction and sentence under Minnesota state law, by Minnesota courts, and appears to allege some violation of his constitutional rights. (Doc. 3 at 39.)

### B. Personal Jurisdiction

A prisoner may file his § 2254 petition in "any court with jurisdiction over the prisoner or h[is] custodian." *Smart*, 21 F. Supp. 2d at 314. This is because "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494–95 (1973). A district court can properly hear a habeas petition, therefore, "[s]o long as the custodian can be reached by service of process." *Id.* at 495; *see also Wang v. Reno*, 862 F. Supp. 801, 812 (E.D.N.Y. 1994) ("[T]his Court has jurisdiction over this matter if personal service can be effected upon the petitioner's custodian.").

Normally, "[a]bsent other considerations, the custodian should be considered to be the person who has day to day control over the petitioner and who can actually 'produce the body.'" *Id.* (citing *Ex Parte Endo*, 323 U.S. 283, 306 (1944)).  However, under certain circumstances, the "true custodian" can be someone other than the person who exercises day-to-day control over the petitioner. *Smart*, 21 F. Supp. 2d at 314.  For example, "a petitioner held in one State [may] attack a detainer lodged against him by another State," because "the State holding the prisoner in immediate confinement acts as agent for the demanding State, and the custodian State is presumably indifferent to the resolution of the prisoner's attack on the detainer." *Braden*, 410 U.S. at 498–99 (footnote omitted).

Palubicki is being held in the custody and control of the DOC for the benefit of the State of Minnesota, where he was charged, convicted, and sentenced. *In re Palubicki*, 2015 WL 4771550, at *1.  In *Smart v. Goord*, Pamela Smart was transferred from New Hampshire, where she was tried, convicted, and sentenced, to New York, pursuant to the ICC, *Smart*, 21 F. Supp. 2d at 313, "[b]ecause New Hampshire lack[ed] adequate facilities to house a female inmate for a life term," *id.* at 312.  Vermont, like New York in *Smart*, "acts solely as [Minnesota's] agent in incarcerating" Palubicki. *Id.* at 314; *see also* Vt. Stat. Ann. tit. 28 § 1604(a).  Also like New York in *Smart*, Vermont's "authority is contingent on that of [Minnesota], which may change [Palubicki's] place of incarceration at any time." *Id.*

Such actual control over Palubicki supports a finding that his "true custodian" is the State of Minnesota. *See Robinson v. Atkinson*, No. 03 Civ.5176 DAB DF, 2004 WL

1798129, at *4 (S.D.N.Y. Aug. 5, 2004) ("In the context of interstate transfers [of prisoners], the sending state remains the custodian of the petitioner, while the receiving state merely acts as an agent for the sending state."). The District of Minnesota, therefore, has sufficient personal jurisdiction over the State of Minnesota to entertain Palubicki's Petition.

### C. Proper Venue

Venue is proper when a habeas petition is filed in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b) (2011). Venue is proper in the District of Minnesota, because the events giving rise to Palubicki's claims occurred there. *Id.* at (b)(2).

### D. Whether Transfer is in the Best Interest of the Litigation

The decision to transfer a case to a different venue rests within the discretion of the district court. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The decision is made on a case-by-case basis, and the court considers what is convenient and fair. *Id.* Courts may consider the following eight factors when weighing whether a transfer is warranted:

> (1) the plaintiff's choice of forum, (2) the locus of the operative facts, (3) the convenience and relative means of the parties, (4) the convenience of witnesses, (5) the availability of process to compel the attendance of

>witnesses, (6) the location of physical evidence, including documents, (7) the relative familiarity of the courts with the applicable law, and (8) the interests of justice, including the interest of trial efficiency.

*Smart*, 21 F. Supp. 2d at 315.  The moving party, in this case the State of Vermont, has "[t]he burden of demonstrating the desirability of transfer . . . ," however, "a court should not disturb a plaintiff's choice of forum 'unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice.'" *Linzer v. EMI Blackwood Music, Inc.*, 904 F. Supp. 207, 216 (S.D.N.Y. 1995) (quoting *Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F. Supp. 955, 962 (S.D.N.Y. 1995)).  Ultimately, to warrant transfer, "[t]he defendant moving for a transfer must . . . demonstrate 'that transfer is in the best interests of the litigation.'" *Id.* (quoting *Eskofot A/S v. E.I. du Pont de Nemours & Co.*, 872 F. Supp. 81, 95 (S.D.N.Y. 1995)).

### 1. Palubicki's Choice of Forum

Generally, a court should not disturb a petitioner's choice of venue "unless other factors weigh strongly in favor of transfer."  *Smart*, 21 F. Supp. 2d at 315 (citing *In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995)).  This factor is deserving of less weight, "[h]owever, when a plaintiff's chosen forum has no connection to the events which give rise to the claim for relief."  *In re Eastern Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994).  In this case, Palubicki's claims for relief relate directly to his original criminal trial in Minnesota and have no relation to the District of Vermont. *See Smart*, 21 F. Supp. 2d at 315.  Therefore, in balancing considerations of convenience and fairness, this factor is deserving of only minimal weight.

9

### 2. Locus of Operative Facts

Similar to the petitioner's choice of forum, "[t]he location of the operative facts is traditionally an important factor to be considered in deciding where a case should be tried." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1994). Courts are more likely to disturb a petitioner's choice of forum "where the case's operative facts have little connection with the chosen forum." *Id.* As discussed above, the operative facts of Palubicki's claims all relate to his trial in Minnesota. These facts have not little, but *no* relation to the District of Vermont. Therefore, this factor weighs in favor of transfer.

### 3. Convenience of Parties

The parties to this case are Palubicki, the District of Minnesota, and the District of Vermont. The fact that Palubicki is incarcerated in the District of Vermont might weigh against transfer, because his presence could be needed in the relevant venue. However, the weight of this factor is undercut by the language of the ICC and the procedural posture of Palubicki's Petition. The ICC states that "[i]nmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state." Vt. Stat. Ann. tit. 28 § 1604(c). Therefore, if Palubicki's physical presence is required in Minnesota, custody of Palubicki may be transferred back to Minnesota. However, as discussed in Section II below, the likelihood that Palubicki's presence will be required in Minnesota is low, because he failed to seek

proper authorization from "the appropriate court of appeals" prior to filing this second Petition. *See* 28 U.S.C. § 2244(b)(3)(A). This factor, therefore, does not discourage transfer.

### 4. Convenience of Witnesses

When determining the proper venue "[t]he convenience of witnesses is an important consideration." *Smart*, 21 F. Supp. 2d at 316 (citing *In re Eastern Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. at 194; *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991)). In this case, this factor weighs strongly in favor of transfer, because it is likely that all witnesses are in the District of Minnesota. (Doc. 4 at 7–8).

### 5. Ability to Compel Attendance of Witnesses

A court's ability to compel witnesses is governed by Fed. R. Civ. P. 45. A court may, through the issuance of a subpoena, "command a person to attend a trial, hearing, or deposition . . . ," if that "person resides, is employed, or regularly transacts business in person" within 100 miles of the issuing court. Fed. R. Civ. P. 45(c)(1)(A). This Court may not, therefore, issue a subpoena compelling witnesses to appear before it, because Minnesota is more than 100 miles away from this Court's location in Burlington, Vermont. This factor weighs heavily in favor of transfer.

### 6. Location of Evidence

All of the evidence in this case is located within the District of Minnesota. While "the 'comparatively low cost of transporting documents' makes their location a less

pressing factor in deciding a venue motion," than some of the other factors, it still weighs in favor of transfer. *Smart*, 21 F. Supp. 2d at 317 (quoting *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 290 (D. Del. 1986)).

### 7. Familiarity with Governing Law

A petitioner, through a § 2254 petition, may challenge his "custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Smart*, 21 F. Supp. 2d at 317 (stating that federal courts entertaining § 2254 petitions "are limited to redressing violations of federal law"). The District of Minnesota is likely to possess greater familiarity with Minnesota criminal procedure, which would be helpful to determining the validity of Palubicki's claims. *See Smart*, 21 F. Supp. 2d at 317. This factor, therefore, supports transfer.

### 8. Interest of Justice

Palubicki and the State of Vermont do not discuss whether transfer is in the interest of justice. However, it is clear that the citizens of Minnesota have an interest in cases being determined in public forums that are convenient to them. The District of Vermont is not a convenient forum for citizens of Minnesota. With respect to this case, the record reflects that the two adult children of the man Palubicki killed, Olson, attended past proceedings. *See Palubicki II*, 727 N.W.2d at 664–65. Olson's children may have a continued interest in attending proceedings regarding Palubicki. Accordingly, this factor supports transfer.

When all of these factors are taken into consideration, it is clear that this Court may transfer Palubicki's Petition to the District of Minnesota.  Not only is this transfer permissible, but it is also preferable, because "a federal habeas corpus claim is better heard in the state where the petitioner was convicted."  *Smart*, 21 F. Supp. 2d at 318.  I therefore recommend that this Court transfer Palubicki's Petition to the District of Minnesota.

II.     **Whether the Court Should Dismiss Palubicki's § 2254 Petition Because Palubicki Failed to Obtain Permission from the Circuit Court to File the Petition**

When a previous § 2254 petition has been decided on the merits, petitioners must submit second or successive petitions to "the appropriate court of appeals for an order authorizing the district court to consider the application."  28 U.S.C. § 2244(b)(3)(A).  "If a petitioner fails to obtain circuit approval prior to filing a second or successive petition, the district court is without jurisdiction to consider the petition and must dismiss it."  *Wool v. Pallito*, Civil Action No. 5:15–cv–208–gwc–jmc, 2015 WL 7820963, at *2 (D. Vt. Sept. 29, 2015) (citing *Burton v. Stewart*, 549 U.S. 147, 153 (2007)).  However, "[t]he rule in this circuit, in the interest of judicial efficiency, is if a district court determines that a petition is second or successive, that court is to transfer the petition to the circuit court."  *Id.* (citing *Torres v. Senkowski*, 316 F.3d 147, 151 (2d Cir. 2003)).

Palubicki has already brought one § 2254 Petition in the District of Minnesota, which was decided on the merits.  (*See* Doc. 4-2 at 3–6.)  The United States Court of Appeals for the Eighth Circuit is "the appropriate court of appeals" for Palubicki to seek

13

an order authorizing him to bring his second § 2254 petition in district court. Palubicki did not seek approval from the Eighth Circuit prior to filing his Petition with this Court. This Court, therefore, is without jurisdiction to hear Palubicki's Petition. Typically, in such a situation, the appropriate action for this Court would be to transfer a petition to the United States Court of Appeals for the Second Circuit. The Second Circuit, however, is not "the appropriate court of appeals," and this Court does not possess the authority to transfer the case to the Eighth Circuit. Therefore, I recommend that this Court transfer Palubicki's Petition to the District of Minnesota, where that court can decide in its discretion to either dismiss Palubicki's Petition or transfer it to the Eighth Circuit. If this Court determines that transfer is not warranted, then I recommend, in the alternative, that this Court dismiss Palubicki's Petition for lack of jurisdiction.

## Conclusion

Based on the foregoing, I recommend that the Court either GRANT the State of Vermont's Motion to Transfer (Doc. 4 at 6–8) or, in the alternative, GRANT the State of Vermont's Motion to Dismiss (*id.* at 5–6) and DENY Palubicki's § 2254 Petition (Doc. 3). Respondent State of Vermont's Motion for an enlargement of time is GRANTED, and, if necessary, the time for filing an Answer to the Petition by the State of Vermont is enlarged to 30 days after the Court's ruling on this Report and Recommendation.

I further recommend that the Court refrain from issuing a certificate of appealability and from ordering an evidentiary hearing, because this Court is without jurisdiction to do either.

Dated at Burlington, in the District of Vermont, this 19th of December, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).